Harold Baer, J.
This is an action for specific performance of an agreement transferring an automobile agency. The plaintiff relies on a written instrument dated July 23, 1959 allegedly prepared by the parties without aid of counsel. The original defenses to the action are threefold: That there were conditions precedent to the effectiveness of the agreement, to wit, the consent of the wife of the individual defendant and that the plaintiff consummate a sale of defendant’s on-hand stock of new 1959 automobiles; that the written agreement is incomplete in that it fails to provide for assumption of lease liability by the plaintiff purchaser; that said agreement is incomplete and unenforcible because, among other things, it fails to provide for disposition of the stock of automobiles on hand and makes no termination or other disposition of an existing employment contract between the parties.
At the trial defendants amended the answer to include two additional affirmative defenses, the Statute of Frauds (Personal Property Law, § 85; Beal Property Law, § 259), and that two thirds of the stockholders of defendant corporation did not approve the proposed sale (Stock Corporation Law, § 20).
The agreement signed by both parties, in summary, sets forth that the defendant corporation will sell and give clear title for $3,500 of all of its physical assets, ‘ ‘ such as all fixtures, parts, signs, tools, furniture, etc., with the exception of 18 radios and all current unsold 1959 Dodges and Plymouths ”. It then provides for the transfer of the lease to the premises involved and that the seller will vacate the premises the following evening; that seller will cancel its selling franchise with the Chrysler Motors Corporation; and that purchaser will pay to seller any security that seller had deposited with the lessor and with various utility companies. Plaintiff delivered to defendant a certified check in the amount of $3,500.
A careful review of the testimony and the agreement in evidence results in the conclusion that the writing is a complete agreement. The contentions raised by the defendants as to the incompleteness of the agreement do not find support either in law or in the facts of this case.
*22 "Unless a contract is ambiguous or vague in its terms the intention of the parties must be gleaned from the four corners of the instrument. A court may not rewrite into a contract conditions the parties did not insert. The intent of the parties must be distilled from the terms of the written agreement itself (Raner v. Goldberg, 244 N. Y. 438; Nichols v. Nichols, 306 N. Y. 490; 3 Williston, Contracts [Rev. ed.], § 610, pp. 1750-1754.) The court may not supply terms to an agreement under the guise of construction or interpretation. The court’s power is limited to giving effect only to the parties’ expressed intent (Friedman v. Handelman, 300 N. Y. 188, 194; Matter of Loew’s Buffalo Theatres, 233 N. Y. 495, 501; Wilson Sullivan Co. v. International Papermakers Realty Corp., 307 N. Y. 20). As was stated in Raleigh Associates v. Henry (302 N. Y. 467, 473): “we concern ourselves with what parties intended, but only to the extent that they evidenced what they intended by what they wrote. ’ ’
Appropos the defense relative to the Statute of Frauds, it should be noted that in certain instances, notwithstanding the existence of a writing, parol evidence is admissible to furnish alleged missing terms of an agreement (cf. Poel v. Brunswick-Balke-Collender Co., 216 N. Y. 310, 314; Holding v. McKinley, 246 N. Y. 40, 45). Defendants have had such an opportunity here and I find that they have wholly failed to prove that the writing is incomplete.
There is no doubt that the parties read, understood and signed this agreement. A signer of an instrument expressive of a jural act is conclusively bound thereby (Pimpinello v. Swift & Co., 253 N. Y. 159). The defendant was anxious to sell this business and in fact had inserted an advertisement in the New York Times for that very purpose. The plaintiff was anxious to buy the business. The defendant changed his mind and it will serve no purpose to speculate on the reasons. Once having signed this agreement he cannot come forward at this time and say that this was only part of the understanding between the parties.
If there was a condition precedent to this agreement, there would be no effective agreement until the happening of the condition (3 Williston, Contracts [rev. ed.], § 666a and notes, p. 1913). The defendant Ross’ contention that the obtaining of his wife’s approval for the sale of the business was such a condition is incredible. The testimony in this case clearly shows that at all times Ross was in full control of the business and ran it without any interference or participation whatsoever by his wife. Likewise, it is not believable that the sale of .the on-hand stock of 1959 cars to a third party was a condition *23 precedent orally agreed upon before the execution of the written instrument. The agreement itself specifically excepts, ‘1 all current unsold 1959 Dodges and Plymouths ”. If their sale was a condition precedent there is no explanation why the contract did not so state. There was no reason for excluding any arrangement for the disposition of these cars. More importantly, there is evidence from which it may be reasonably inferred that the defendant wished to sell the cars independently so as to avoid loss of rebates received from previous sales. Any bulk sale to another dealer or return to the Chrysler Motors Corporation would have resulted in a financial loss to the defendant Boss.
Defendants’ further defense that the agreement was incomplete because it failed to provide for an assumption agreement of the lease is, likewise, untenable. The plaintiff, once in possession, would be liable for rent (Mann v. Munch Brewery, 225 N. Y. 189). The evidence in this case clearly shows that the plaintiff has always been and still is ready, willing and able, to assume the lease and all the obligations contained therein. This was the very purpose for which he appeared at the offices of the landlord on July 24, 1959. Moreover, under the very terms of the lease, the plaintiff, as an assignee would be bound to assume in writing all the terms, covenants and conditions contained therein. The defendant Boss, in refusing to go through with the deal, prevented the plaintiff from executing the necessary assumption agreement the day the parties were to appear at the landlord’s office. It is axiomatic that an expressed covenant made by an assignee to assume the lease binds bim thereafter by privity of estate as well as privity of contract with the landlord (Hart v. Socony Vacuum Oil Co., 291 N. Y. 13, 16; Dassori v. Zarek, 71 App. Div. 538).
While it is true that the agreement is silent as to the then existing employment contract between the plaintiff and the corporate defendant, it must be inferred that both parties knew and understood from the very terms of the agreement that plaintiff entering upon his own venture was forthwith leaving the employ of the defendant. In fact, the defendant had no further use of his services upon the termination of its franchise. Defendant also admittedly knew that immediately upon the receipt of the defendant’s cancellation of the franchise with the Chrysler Motors Corporation, plaintiff would apply for a Dodge franchise.
This brings us to the last defense, to wit, that there was not the consent of two thirds of the defendant corporation’s stockholders to the proposed sale (Stock Corporation Law, § 20). *24 The limitations imposed by the common law and by this section on the right to sell corporate property are based fundamentally upon the right of stockholders to object to a virtual dissolution of the corporation through acts of self-destruction which are inconsistent with the corporate purpose (Matter of Timmis, 200 N. Y. 177, 181; Matter of Bacon, 287 N. Y. 1; Des Moines Life & Annuity Co. v. Midland Ins. Co., 6 F. 2d 228, 230).
It is worth noting that the plaintiff did not buy the corporation, its business or its capital stock. He only purchased certain of its assets. Further, there is no evidence that the defendant corporation sold substantially all of its property or an integral part thereof essential to the conduct of its business. In fact, there is evidence that through other holdings the defendant would and could continue in business. I find that there is no convincing showing that the defendant corporation would be prevented from engaging in the business of selling automobiles, or that its right to carry on this line of business would be permanently lost. On the contrary, I am convinced that the defendant corporation would and will be able to carry on its business in another location. Even if this were not so, I find that the defendant has failed to sustain this defense in view of the conclusive evidence that the defendant Eoss was and is in fact the sole stockholder of the defendant corporation. He so held himself out to the Chrysler Motors Corporation and all documents concerning the corporate defendant and the Chrysler corporation indicate that the defendant Eoss was the 100% stockholder. Moreover, since the burden of proof is upon the defendant, his failure to offer into evidence the corporate books which were available in court, or other corroborating evidence to show the holders in the corporation, is significant.
It has long been the rule that equity is available to place the parties to a contract in the legal position that they would have occupied if the repudiated agreement had been performed (Monclova v. Arnett, 3 N Y 2d 33, 34; 5 Williston, Contracts [rev. ed.], § 1418, p. 3951 et seq.; 81 C. J. S., Specific Performance, § 1, pp. 408-409).
While it is true that equity is loath to grant specific performance of a contract founded upon grossly inadequate consideration, this is so only where there are other circumstances indicating unfairness (cf. Rossiter v. Vogel, 134 F. 2d 908, 912 [C. C. A., 2d Cir.]; 5 Williston, Contracts, § 1428, pp. 3998-3999; 81 C. J. S., Specific Performance, § 39, subd. b, p. 509). Equity will not refuse to decree specific performance solely on the ground of inadequacy of consideration (Cochran v. Taylor, 273 N. Y. 172,180; 3 Pomeroy, Equity Juris. [5th ed.], *25 § 926, pp. 630-631; 81 C. J. S., Specific Performance, § 39, snbd. b, p. 509).
As to the question of adequacy of consideration, the rule was well stated by the court in Mencher v. Weiss (306 N. Y. 1, 8): “ The slightest consideration is sufficient to support the most onerous obligation; the inadequacy, as has been well said, is for the parties to consider at the time of making the agreement, and not for the court when it is sought to be enforced. It is competent for the parties to make whatever contracts they may please, so long as there is no fraud or deception or infringement of law.” (See 17 C. J. S., Constracts, § 127, pp. 47A-475.)
There is no convincing proof that any of the elements which would restrain the court from granting specific performance is present in this case.
Plaintiff is entitled to specific performance. He is not entitled to any accounting or damage for loss of profits. He did not bargain for defendant’s business, only for some of the assets. While he may be entitled to the difference, if any, in the value of inventory of parts and tools on July 24, 1959 and today, that is such a small part of the transaction as to make it unduly burdensome to keep the litigation open for an accounting of so small an item.
Plaintiff is entitled to the furniture, fixtures, signs, tools, and parts on hand except radios and new cars. He is also entitled to a transfer of the lease but it is up to plaintiff to obtain the necessary consent from the landlord and otherwise comply with the lease, including the execution of an assumption agreement. Defendants are ordered to cancel the existing franchise of corporate defendant with the Chrysler Motors Corporation. The certified check for $3,500 is to be delivered by plaintiff to defendants forthwith.
Plaintiff is awarded $50 costs.
Settle judgment on notice. Ten-day stay; 60 days to make a case.
Findings of fact and conclusions of law were waived so that this is the decision of the court pursuant to section 440 of the Civil Practice Act.