**In the Matter of 716 THIRD AVENUE HOLDING CORP., Bankrupt.**

United States District Court
S. D. New York.
Jan. 6, 1964.

Jacob Oliner, New York City, for trustee.

Argiriou & Finkel, Brooklyn, N. Y., for respondent, A.G.V. Associates, Inc.; Samuel Newfield, New York City, Bernard Finkel, Brooklyn, N. Y., of counsel.

FREDERICK van PELT BRYAN, District Judge:

This is a petition to review the order of a referee in bankruptcy which dismissed the petition of the trustee for a declaration that an assignment by the bankrupt of a leasehold was null and void or, alternatively, for a declaration that the assignment was a mortgage and for a determination of the amount required for its redemption.

The bankrupt, 716 Third Avenue Holding Corp. was a New York corporation organized in 1952. In the spring of 1962, the bankrupt's sole asset was a long-term lease of a one-story building at Third Avenue and 45th Street in New York City. The building contained two stores and a restaurant; each was occupied under a separate sublease from the bankrupt. The restaurant was occupied by the Two Johns Restaurant Corp. (Two Johns), which then was in serious financial difficulty. Two Johns owed the bank-

rupt approximately $20,000 in rent and was in default in its payments for restaurant equipment purchased from Varvaris Inc. and others under conditional sales and chattel mortgage agreements.

The imminent financial collapse of Two Johns threatened the bankrupt with the loss of the major part of its rental income and possible forfeiture of the leasehold to the fee owner. Under these circumstances, the bankrupt agreed on May 12, 1962 to assign the entire leasehold to Varvaris Inc. in return for payments by the latter of $22,000.

The assignment agreement provided that the payments under it were to be applied as follows: $4,500 to pay delinquent real estate taxes on the property; $1,000 to pay the rent owed by the bankrupt to the fee owner for May, 1962; $3,000 to provide additional security for the fee owner; $2,500 to pay attorney's fees, including the fee of the assignee's attorney; $5,000 to pay the conditional sales obligations of Two Johns; and $6,000 to be paid directly to the bankrupt. The agreement provided further that the bankrupt could repurchase the leasehold within nine months from the date of closing for $17,800 plus interest. If the bankrupt exercised this right, the assignee would account for any profits received during the period of its possession, and the bankrupt would make good any losses.

Prior to the closing on May 24, 1962, Varvaris Inc. assigned its rights under the assignment agreement of May 12, to A.G.V. Associates, Inc. At the closing the bankrupt executed an assignment of its leasehold to A.G.V., and A.G.V. executed a reassignment to the bankrupt. Both instruments, together with other papers, were delivered to the attorneys for A.G.V., to be held by them in escrow under the terms of the May 12 agreement, and the various payments there provided for were made. On August 29, 1962, the attorneys for A.G.V. recorded the assignment in the New York City Register's office, but did not record the reassignment.

On June 28, 1962, an involuntary petition in bankruptcy was filed against the 716 Third Avenue Holding Corp., and on December 28, 1962 it was adjudicated a bankrupt. On February 8, 1963, and within the nine month period provided by the May 12 agreement, the trustee in bankruptcy notified A.G.V. of his intention to repurchase the leasehold, but made no tender of money, and in fact did not have on hand the amount that would have been required to repurchase under the terms of the agreement.

On February 18, 1963 the trustee brought a proceeding against A.G.V. before the referee in which he asked for a declaration: (1) that the assignment of the leasehold was a fraudulent conveyance under 11 U.S.C. § 107; (2) that the recordation of the assignment was void under § 320, New York Real Property Law; (3) that the assignment was void for lack of the stockholder consent required by § 16, New York Stock Corporation Law; and (4) that the assignment was a mortgage rather than an absolute transfer. In connection with his fourth claim, the trustee asked the referee to determine the amount required to redeem the leasehold from mortgage and to order its sale for the purpose of raising that amount. During the hearing before the referee the second claim was dismissed, and at the conclusion of the hearing the remaining claims were also dismissed, all for failure of proof. The trustee has petitioned this court to review the order of the referee dismissing his petition. Jurisdiction is based on 11 U.S.C. § 67, sub. c.

■■ Since the trustee's claims were tried before the referee in reverse order to that in which they were asserted in the petition, they will be considered in that order here. The fourth claim was for a declaration that the assignment was a mortgage and a determination of the amount necessary to redeem the mortgage. Section 320, New York Real Property Law, provides that "A deed conveying real property, which by any other written instrument, appears to be intended only as a security in the nature of a

mortgage, although an absolute conveyance in terms, must be considered a mortgage * * *." Under New York law, the burden of establishing that a conveyance, absolute on its face, was intended as a mortgage is on the party alleging it, Charles T. Streeter Constr. Co. v. Kenny, 209 App.Div. 697, 205 N.Y.S. 611 (1st Dept. 1924), and he must present clear and convincing proof to that effect. Ensign v. Ensign, 120 N.Y. 655, 24 N.E. 942 (1890); Zivotovsky v. Max, 190 Misc. 1044, 75 N.Y.S.2d 553 (Sup.Ct. Cortland Co. 1947), aff'd, 276 App.Div. 792, 92 N.Y.S.2d 631 (3rd Dept. 1949). The referee dismissed this claim on the ground that the trustee had failed to sustain his burden of proof, and found that the assignment was intended to be a sale rather than a mortgage. Unless this finding was clearly erroneous, it must be affirmed. In re Madelaine, 164 F.2d 419 (2 Cir. 1947).

The evidence as to the true nature of the transaction was conflicting. John Vlahakis, president of the bankrupt, testified that the leasehold was assigned to A.G.V. as security for a loan. Several provisions in the agreement tend to support this claim: the agreement provided that part of the payment by the assignee would be used as additional security for the fee owner, an unusual provision for the bankrupt to accept if an absolute transfer were intended; the price at which the leasehold could be repurchased was substantially the same as the amount paid by A.G.V. for the benefit of the bankrupt; and, if the bankrupt exercised its option to repurchase, it would receive the profits or bear the losses resulting during the period of A.G.V.'s possession of the leasehold.

■■ On the other hand, there was no evidence that the bankrupt was indebted to the assignee prior to signing the agreement, and the agreement did not state that a debt was being created by the transaction. The only evidence that the payment by A.G.V. might have been intended to create a debt was the testimony by the bankrupt's president that the transaction was a loan. The credibility of this witness was for the referee to determine and, although the referee did not so state, it is fair to infer that he disbelieved the witness, as he was entitled to do, especially since the witness claimed to be a creditor of the bankrupt, and therefore, had a substantial interest in the success of the trustee's claim.

■■ It is well settled in New York that a conveyance is not a mortgage unless a debt exists and the conveyance is intended to secure payment of the debt. Kraemer v. Adelsberger, 122 N.Y. 467, 25 N.E. 859 (1890); Bascombe v. Marshal, 129 App.Div. 516, 113 N.Y.S. 991 (2nd Dept. 1908); In re Exterior Street, 168 Misc. 575, 6 N.Y.S.2d 110 (Sup.Ct. Bronx Co. 1938), aff'd, 255 App.Div. 767, 7 N.Y.S.2d 643 (1938). Since the trustee failed to present sufficient proof of the existence of a debt, the referee's dismissal of the fourth claim, and his finding that an absolute conveyance was intended, was not clearly erroneous, and must, therefore, be affirmed.

■ The third claim was for a declaration that the assignment was void for want of stockholder consent under § 16, New York Stock Corporation Law. That section permits a stock corporation to mortgage its property, and provides that "The consent to the execution of such mortgage * * * by the holders of not less than two-thirds of the total number of shares outstanding entitled to vote thereon * * * shall be required." This provision is not applicable, however, since the assignment was an absolute transfer rather than a mortgage.

Although the trustee, before the referee, based his third claim solely on § 16, he now urges that this claim is also supported by § 20, New York Stock Corporation Law. That section provides that

"A stock corporation * * * may voluntarily sell, lease or exchange its property * * *; provided, however, that if such sale, lease or exchange is not made in the regular course of business of the corporation and involves all or substantially all of its property * * *

such sale, lease or exchange shall not be made without the consent of either the holders of record of all its outstanding shares entitled to vote thereon given in writing without a meeting or the holders of record of two-thirds of its outstanding shares entitled to vote thereon obtained at a meeting of the stockholders called pursuant to section forty-five."

The referee found that the president of the bankrupt, Vlahakis, was also its sole stockholder, and that he consented to the assignment. The evidence on which this finding was based consisted of a certificate for 25 shares of common stock of the bankrupt issued to Vlahakis in 1952, testimony by Vlahakis that he was the sole stockholder, and his representations to the same effect in the agreement of May 12, 1962 and in an affidavit signed on May 23, 1962.

The trustee attempted to prove that Vlahakis was not the sole stockholder by offering a certificate for 25 shares of common stock of the bankrupt which had apparently been endorsed over to John Vernazza by its original owner. Since there were no transfer tax stamps annexed to the certificate, however, the trustee conceded and the referee ruled that the certificate was inadmissible. Vlahakis then testified that the bankrupt's minute book, stock certificate book, and stock record book had all disappeared, whereupon the trustee offered the certificate as common law evidence that Vlahakis was not the sole stockholder. The referee again sustained an objection to the offer, apparently on the ground that the certificate was not the best evidence of stock ownership, and that sufficient foundation had not been laid for its admission as secondary evidence.

■■ The trustee claims that since the bankrupt's stock record book had been lost common law evidence of stock ownership should not have been excluded. Under the Best Evidence Rule, secondary evidence is not admissible to prove the contents of a writing unless sufficient

legal excuse is shown for failure to produce the original. Crane v. Bennett, 77 App.Div. 102, 79 N.Y.S. 66 (1st Dept. 1902), aff'd, 177 N.Y. 106, 69 N.E. 274 (1903). Where it appears that the original has been lost or destroyed, the party seeking to introduce secondary evidence must show that he has made a diligent search for the original, Kearney v. Mayor of New York, 92 N.Y. 617 (1883), and, if it appears that he is responsible for the loss he must also show that he is not chargeable with fraud or bad faith. West v. New York Central & Hudson River R.R. Co., 55 App.Div. 464, 67 N.Y.S. 104 (4th Dept. 1900); cf. People v. Betts, 272 App.Div. 737, 74 N.Y.S.2d 791 (1st Dept. 1947), aff'd, 297 N.Y. 1000, 80 N.E.2d 456 (1948).

■ Thus the bare testimony of Vlahakis that the bankrupt's books had disappeared was not a sufficient foundation for the introduction of secondary evidence of their contents. There was no showing that a diligent search for the books had been made or of the circumstances under which they disappeared. For these reasons, the referee was correct in excluding the secondary evidence offered by the trustee to prove stock ownership.

The trustee also attempted, through the testimony of John Vernazza, to prove that Vlahakis was not the sole stockholder. Vernazza testified that he was a director of the bankrupt, that a certificate for 50% of the stock in the bankrupt was endorsed over to him, that it was held in escrow as security for a debt, that he was not in default in any of the payments for which the stock was held as security, and that on October 31, 1961 he attended and voted at a meeting of the directors and stockholders of the bankrupt.

■ While this testimony might sustain a claim by Vernazza that he was the equitable owner of 50% of the stock of the bankrupt, it does not prove that the requirements of § 20 were not met. The consent required by § 20 is that of

stockholders of record, and the trustee's proof did not establish Vernazza as a stockholder of record, nor did it establish that Vlahakis was not the sole stockholder of record. Since the burden of proving lack of compliance with the statute is on the party who asserts it, Frankel v. Tremont Norman Motors Corp., 21 Misc.2d 20, 193 N.Y.S.2d 722 (Sup.Ct. Bronx Co. 1959), aff'd, 10 A.D. 2d 680, 197 N.Y.S.2d 576 (1st Dept. 1960), aff'd, 8 N.Y.2d 901, 204 N.Y.S.2d 146 (1960), and since the trustee failed to sustain this burden, the referee was correct in dismissing the third claim. It is unnecessary, therefore, to consider whether, as A.G.V. claims, stockholder consent was not required because the assignment was in the ordinary course of the bankrupt's business.

The second claim was that A.G. V.'s recordation of the assignment as an absolute conveyance, without the simultaneous recordation of the instrument of defeasance, rendered the recordation void under § 320, New York Real Property Law. Since § 320 applies only to a deed which "appears to be intended only as a security in the nature of a mortgage," and since the referee's finding that the assignment was not intended as a mortgage has been affirmed, § 320 is inapplicable. It follows, therefore, that the dismissal of the second claim was not erroneous.

The first claim sought to have the assignment declared void under the Fraudulent Conveyances Act, 11 U.S.C. §§ 107, sub. d(2) (a) and 107, sub. d(2) (c). Under § 107, sub. d(2) (a), a transfer by a debtor, within one year prior to the filing of a petition in bankruptcy against him, is fraudulent "if made or incurred without fair consideration by a debtor who is or will be thereby rendered insolvent, without regard to his actual intent;" under § 107, sub. d(2) (c), such a transfer is fraudulent "if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature."

No evidence whatsoever was presented to support a claim that the bankrupt intended to, or believed it would incur debts beyond its ability to pay by reason of the assignment of its leasehold. The assignment was, therefore, not shown to be fraudulent under § 107, sub. d(2) (c).

With respect to the claim based on § 107, sub. d(2) (a), the referee found that the bankrupt was not rendered insolvent by virtue of its assignment of the leasehold. Under the Bankruptcy Act, a person is insolvent whenever his liabilities are greater than the fair value of his assets. 11 U.S.C. § 1(19); Tumarkin v. Gallay, 127 F.Supp. 94 (S.D.N.Y.1954). The evidence concerning the bankrupt's financial condition at the time of the assignment was less than conclusive. John Vlahakis, president of the bankrupt testified initially that he was not familiar with the corporation's financial position. He later testified in response to leading questions that the assignment did not bring the bankrupt sufficient money to pay all its debts, but was unable to support this conclusion by giving a detailed account of the assets and liabilities of the bankrupt.

The referee's remarks at the conclusion of Vlahakis' testimony indicate his belief that any evidence of insolvency that had been presented had come from the attorney for the trustee rather than from the witness. The referee was plainly justified in so concluding. In the light of this conclusion, and in the absence of any detailed evidence of the bankrupt's assets and liabilities, it was not clearly erroneous for the referee to find that the assignment did not render the bankrupt insolvent.

Since the trustee failed to establish any of his claims, the referee was correct in dismissing the petition, and his order of dismissal will be and is hereby affirmed.

It is so ordered.