**In the Matter of FARMERS FEDERA-
TION COOPERATIVE, INC.,
Bankrupt.**

**Claim of McMillen Feeder Finance
Corporation.**

**No. 1228.**

United States District Court
W. D. North Carolina,
Asheville Division.

June 11, 1965.

Thomas A. Uzzell, Jr., Asheville, N. C., for bankrupt.

Herbert L. Hyde, Asheville, N. C., for McMillen Feeder Finance Corp.

CRAVEN, Chief Judge.

From the decision of the referee to treat the claim of McMillen Feeder Finance Corporation as an unsecured rather than a secured claim, McMillen has appealed and has made 61 assignments of error. About 23 attack the validity of the findings of fact specifically made by the referee and his conclusions of law. The remaining assignments of error are directed to alleged errors of the referee in receiving or rejecting evidence.

■ Lawyers and judges become so accustomed to the rules of evidence in jury trials that it is sometimes assumed erroneously that such restrictive rules apply to nonjury tribunals. It was never intended to be so. 1 Wigmore, Evidence 27, Section 4(b) (3rd Ed. 1940). The Eighth Circuit has said: "In the trial of a nonjury case, it is virtually impossible for a trial judge to commit reversible error by receiving incompetent evidence, whether objected to or not. * * * [E]xperience has demonstrated that in a trial or hearing where no jury is present, more time is ordinarily lost in listening to arguments as to the admissibility of evidence and in considering offers of proof than would be consumed in taking the evidence proffered, and that, even if the trier of facts, by making close rulings upon the admissibility of evidence, does save himself some time, that saving will be more than offset by the time consumed by the reviewing court in considering the propriety of his rulings and by the consequent delay in the final determination of the controversy. * * * " Builders Steel Co. v. Commissioner of Internal Revenue, 8 Cir., 179 F.2d 377 at 379 (8th Cir. 1950).

■■ Receiving irrelevant testimony can seldom be prejudicial error for the simple reason that the non-jury trier of fact is able to disregard the irrelevant when he comes to make his findings. If in doubt, a referee in bankruptcy ought to always receive the evidence. It is far easier to commit reversible error by the rejection of it than by letting it come in.

In most instances, the assignments of error are directed to the failure of the referee to sustain objections to testimony and his having received allegedly incompetent testimony. These assignments of error are utterly without merit.

■ In only a few instances did the referee sustain objections to questions. It perhaps would have been better had he not done so. Even so, the parties were generally allowed to develop the evidence fully and the error, if any, in sustaining certain objections to offered testimony do not appear to be of such importance as to constitute prejudcial and reversible error. These exceptions are likewise overruled.

McMillen's claims are based on chattel mortgages executed as follows:

(1) The first, dated July 7, 1961, was for the sum of $20,202.00, securing a promissory note in that amount of same date and recorded in Buncombe County on August 11, 1961.

(2) The second, dated July 7, 1961, was for the sum of $2,250.00, securing a promissory note in the same amount, executed on August 1, 1961, and recorded in Buncombe County on August 11, 1961.

(3) The third, dated September 27, 1961, was for the sum of $12,712.50, securing a promissory note in the same amount, dated September 1, 1961.

The first chattel mortgage was executed to cover "13,468 heavy breed pullets now located on the farm of Farmers Federation Cooperative in Buncombe County, N. C." The second mortgage covered 8,475 heavy breed pullets on the same farm in the same county. The third

mortgage covered 1,800 light breed pullets on the same farm in the same county.

The referee found as a fact that at the time the above chattel mortgages were executed Federation had only two flocks of chickens in Buncombe County as follows: "2,000 pullets, 260 cockerels on the farm of *E. R. Wells*; 3,400 pullets and 442 cockerels on the farm of *Joe Wells*."

The mortgages attempted to create a lien on property which was not in existence when the instruments were executed. At that time Federation had only two flocks of chickens in Buncombe County and they were located on the farms of E. R. Wells and Joe Wells. Federation had no chickens as described in the chattel mortgages on its own farms.

"In order for a chattel mortgage to create a lien, the property covered by it must at the time it is executed, be identified, the lien being limited to the property described in the mortgage." 15 Am.Jur. 2d Chattel Mortgages, Section 53.

■ Since there was no property in existence, as described in the mortgages, to which a lien could attach, the mortgages are invalid.

■ Alternatively, assuming the mortgages to be valid, they nevertheless come within the purview of Section 67, sub. d(2) of the Bankruptcy Act, 11 U.S. C.A. Section 107, sub. d(2), and may be avoided.

The referee concluded as a matter of law "(t)hat the instruments on which this claim is based were executed within one year of the date of bankruptcy; that at the time of their execution the bankrupt had existing unsecured creditors, knew that it could not meet its obligations as set forth in the said instruments as they matured; that no consideration was received by the bankrupt upon the execution of the said instruments (chattel mortgages), and said instruments are therefore fraudulent and are null and void as to the trustee in bankruptcy, as provided in 11 U.S.C.A. 107(d)."

Title 11 U.S.C.A. Section 107, sub. d(2) provides:

"Every transfer made and every obligation incurred by a debtor within one year prior to the filing of a petition initiating a proceeding under this act by or against him is fraudulent * * * (c) as to then existing and future creditors, if made or incurred without fair consideration by a debtor who intends to incur or believes that he will incur debts beyond his ability to pay as they mature."

■ Under this section, there must be proof sufficient to justify the conclusion that the bankrupt's obligation was entered into believing that he would be unable to pay his debts as they matured. 4 Collier, Bankruptcy 366, Section 67.36. To come within this provision of the Bankruptcy Act does not require a showing of actual intent on the part of the debtor to delay or defraud either present or future creditors; it is enough to establish that the transaction was entered into without fair consideration and that there existed at the time of the transaction(s) a general intention or belief on the part of the debtor that debts would be incurred beyond his ability to pay as they matured. "Existence of such a mental attitude on the part of the bankrupt is inevitably one of fact. * * *" Ibid.

There was testimony (and supporting evidence) by Mr. Higdon, a Federation official, that as of June 30, 1961, Federation owed on open account debts amounting to $810,285.10; that at that time Federation was experiencing difficulties in meeting its debts as they matured, and Mr. Higdon further testified that he believed the debts incurred as of June 30, 1961, and subsequent thereto were beyond the company's ability to pay as they matured. This was the financial picture of Federation approximately seven days before the first contract with McMillen was executed.

Higdon further testified that debts incurred subsequent to the execution of the

chattel mortgages in question on unsecured accounts amounted to $140,000.00.

■ With respect to whether the chattel mortgages were executed within one year of bankruptcy, when did bankruptcy occur? The trustee contends, and the referee found, that it became a bankrupt as of January 29, 1962. McMillen Feeder Finance contends that it became a bankrupt on the date of adjudication, February 15, 1963.

McMillen's contention is without merit. There was filed against Federation on January 29, 1962, an involuntary petition in bankruptcy. On February 7, 1962, a petition for reorganization under Chapter X of the Bankruptcy Act was filed.

■ Where a petition for reorganization is filed in a pending bankruptcy proceeding and reorganization fails the bankruptcy proceeding shall be deemed reinstated and conducted as if a petition under Chapter X had not been filed. 9 Am.Jur.2d Bankruptcy 1136, Section 1620. There is, in substance, a relation back of the proceedings to the date when the petition in bankruptcy was filed— in this case January 29, 1962.

"In general the statute of a claim must depend upon its provability at the time the bankruptcy petition was filed." 9 Am.Jur.2d Bankruptcy 315, Section 392.

■ Although the referee's findings of fact and conclusions of law do not belabor the point, it is plain that he considered the case an appropriate one for piercing the corporate veil. He noted that McMillen Feeder Finance Corporation is a wholly-owned subsidiary of Central Soya Corporation and that McMillen Feed Mills is simply a division of Central Soya. The referee considered the net result of the transactions to be the same as if McMillen Feeder Mills had attempted to take a chattel mortgage to secure its own prior and unpaid open account. His conclusion cannot be held clearly erroneous.[1]

1. See: Farmers Warehouse of Pelham, Inc. v. Collins, 220 Ga. 141, 137 S.E.2d 619 at 625 (1964); Park Terrace v.

After carefully reviewing the petition for review and the order entered by the referee, it is adjudged that the referee was not clearly wrong in any of his findings of fact or conclusions of law. There is substantial evidence to support his findings. For the several reasons stated, the order of the referee is affirmed.

Phoenix Indemnity Co., 243 N.C. 595, 91 S.E.2d 584 (1956).