**In the Matter of FEATHERWORKS CORPORATION, Debtor.**

**Nos. 82 CV 2047, 83 CV 439 (ERN).**

United States District Court,
E.D. New York.

Jan. 10, 1984.

Finkel, Goldstein & Berzow by Harold S. Berzow, New York City, for debtor.

Louis P. Rosenberg, Brooklyn, N.Y., for Farwest Garments, Inc.; Richard L. Koral, Brooklyn, N.Y., of counsel in 83 CV 439.

## MEMORANDUM AND ORDER

NEAHER, District Judge.

These appeals arise from two orders of the bankruptcy court in a chapter 11 reorganization. The first order, which reopened the voting on the proposed plan for reorganization, is challenged by one of the creditors, Farwest Garments, Inc. (Farwest). The second order, which denied confirmation of the plan, was entered along with a lengthy and thorough opinion detailing the proceedings. *In re Featherworks Corp.*, 25 B.R. 634 (Bkrtcy.E.D.N.Y.1982). The following issues are presented for review:

1. Whether the bankruptcy court erred in reopening the voting on the plan for reorganization.

2. Whether the bankruptcy court erred in refusing to permit a major creditor, Walter E. Heller & Co. (Heller), from changing its vote from rejection to acceptance of the plan.

3. Whether the bankruptcy court erred in classifying Windsor Trading Corp. (Windsor) as an inside creditor for purposes of 11 U.S.C. § 1129(a)(10).

4. Whether the bankruptcy court erred in denying confirmation of the plan based upon the evidence of what creditors would receive in a chapter 7 liquidation.

5. Whether the bankruptcy court erred in its rulings concerning the participation of Kerwin & Elliott, the debtor's former legal counsel.

### I.

The circumstances which assertedly necessitated the reopening of the voting on the plan are related in 25 B.R. at 640–41. Despite the opportunity, no creditor changed its vote, and as explained therein, Heller's application to change its vote was denied. Thus, the record reveals that the

order reopening the voting was inconsequential. Farwest, the appellant in No. 82 CV 2047, has not sustained its burden of demonstrating how it was harmed by the reopening of the voting, *see U.S. Machinery Movers v. Beller,* 280 F.2d 91, 95 (8th Cir.), *cert. denied,* 364 U.S. 903, 81 S.Ct. 236, 5 L.Ed.2d 195 (1960) (the burden of demonstrating error in the bankruptcy court's order is on the appellant), and is not entitled to a judgment reversing it. *See generally Commercial Credit Corp. v. Skutt,* 341 F.2d 177, 181 (8th Cir.1965) ("The court sitting in bankruptcy, in any event, has the right while a case is pending to modify or vacate its order so long as no intervening right has become vested in reliance thereon."); *Federal Land Bank of Springfield v. Hansen,* 113 F.2d 82, 84 (2d Cir.1940) ("A bankruptcy court has continuous power to modify its own orders, if no intervening rights are disturbed."); *In re Parr,* 1 B.R. 453, 455 n. 2 (Bkrtcy.E.D.N.Y.1979) ("In its equitable powers, the Bankruptcy Court may vacate or modify previous orders when subsequent events demonstrate the necessity therefor. *In re Texlon Corp.,* 596 F.2d 1092, 1100–01 (2d Cir.1979).").

The issues asserted by the debtor to support a reversal of the bankruptcy court's denial of confirmation are dealt with below, bearing in mind that the court's findings may not be disturbed unless found to be clearly erroneous. *Spitzer v. Stichman,* 278 F.2d 402, 410 (2d Cir.1960) (cases cited therein).

## II.

■ Debtor first contends that the bankruptcy court erred in finding that Arthur Puro's payment of $25,000 to Heller was made to purchase Heller's change of vote.

Before the reorganization petition, Heller had financed the debtor's inventory and accounts receivable, which were pledged as security for its loans. It is owed approximately $1,500,000. Debtor asserts that the plan was drafted almost to Heller's specifications, but after the drafting, Heller discovered that representations made by Arthur Puro, the debtor's principal officer,

about the quality of some of the inventory were inaccurate. In response, Heller, quite displeased, rejected the plan. It submitted evidence, a letter in which it had initially expressed an intention to approve the plan, in explanation of its change of heart. The change had materialized shortly after Arthur Puro paid Heller $25,000 for a general release and reassignment of the uncollected pre-petition accounts receivable. Understandably Farwest objected to Heller's changing its vote, asserting that the purported settlement of this collateral claim constituted a criminal offense under 18 U.S.C. § 152 and bad faith under 11 U.S.C. § 1126(e).

> "[I]f a member of the majority, because of having been misled, or of new information, or a change in the condition of the debtor, or for other good reason, should *honestly* alter his opinion of what is good for himself and the dissenting minority, the judge ought at any time before the plan is confirmed to hear his reasons and, if found substantial, to permit withdrawal."

*Continental Ins. Co. v. Louisiana Oil Refining Corp.,* 89 F.2d 333, 337 (5th Cir.1937); *accord In re Frank Fehr Brewing Co.,* 268 F.2d 170, 181 (6th Cir.1959); *cf. Bartle · v. Markman Bros., Inc.,* 314 F.2d 303, 306 (2d Cir.1963).

In its argument, debtor initially assumes that the bankruptcy court erred by giving more weight to the circumstantial timing of the transaction than to Heller's self-serving evidence of its motives. The timing aside, the absence of evidence of the quality of the inventory and the inaccuracy of Puro's representations thereof, which evidence should be in debtor's possession, further supports the bankruptcy court's conclusion that the payment was not in good faith.

The Court recognizes that good faith and self-dealing are not mutually exclusive. The issue is much more complex, however, because vote changing is the exception and not the rule. Thus, debtor must demonstrate the propriety of Heller's actions. *See Continental Ins. Co. v. Louisiana Oil Refining Corp., supra; In re Frank Fehr Brewing*

*Co., supra; In re Fuller Cleaning & Dyeing Co.,* 118 F.2d 978 (6th Cir.1941). The Court is satisfied that this burden has not been sustained, and that the authorities debtor relies upon are not to the contrary.

In *In re P–R Holding Corp.,* 147 F.2d 895 (2d Cir.1945), the Court stated:

"The mere fact that a purchase of creditors' interests is for the purpose of securing the approval or rejection of a plan does not of itself amount to 'bad faith.' When that purchase is in aid of an interest other than an interest as a creditor, such purchases may amount to 'bad faith' under section 203 of the Bankruptcy Act [the predecessor to 11 U.S.C. § 1126(e) ]. And certainly there is 'bad faith' when those purchases result in a discrimination in favor of the creditors selling their interests."

*Id.* at 897 (citations omitted).

Heller's claim for fraud, which arose from its interest in the debtor's inventory and accounts receivable, was treated more favorably than any other tort claim, and for a relatively small price, Puro was guaranteed the continuation of his business. More importantly, however, debtor's new life offered Heller the opportunity to finance debtor's accounts in the future. As the former financing entity, Heller possessed an interest in the continued operation of the debtor that was not shared by other creditors. It may well have settled for the costs of financing the accounts that were pledged as collateral. The other creditors, all of whom had already voted, were not similarly afforded a chance to convert their claims to immediate cash.

With respect to the denial of Heller's application to change its vote, the Court does not believe that the law countenances vote trafficking and assertedly otherwise innocent self-dealing *after the votes have been cast.*

"A year before the House Committee on the Judiciary held its extensive hearings on the Chandler Act, a Circuit Court of Appeals held that a creditor could not be denied the privilege of voting on a reorganization plan under § 77B, al-

though he bought the votes for the purpose of preventing confirmation unless certain demands of his should be met. *Texas Hotel Corp. v. Waco Development Co.,* 87 F.2d 395 [5th Cir.1936]. The hearings make clear the purpose of the Committee to pass legislation which would bar creditors from a vote who were prompted by such a purpose. To this end they adopted the 'good faith' provisions of § 203. Its purpose was to prevent creditors from participating who 'by the use of obstructive tactics and hold-up techniques exact for themselves undue advantages from the other stockholders[/creditors] who are cooperating.' Bad faith was to be attributed to claimants who opposed a plan for a time until they were 'bought off'; those who 'refused to vote in favor of a plan unless ... given some particular preferential advantage.' Hearings on Revision of the Bankruptcy Act before the Committee on the Judiciary of the House of Representatives, 75th Cong., 1st Sess., on H.R. 6439, Serial 9, pp. 180–82."

*Young v. Higbee Co.,* 324 U.S. 204, 211 n. 10, 65 S.Ct. 594, 598 n. 10, 89 L.Ed. 890 (1945); *cf. In re Pine Hill Collieries Co.,* 46 F.Supp. 669 (E.D.Pa.1942); *In re Lorraine Castle Apts. Bldg. Corp., Inc.,* 53 F.Supp. 994, 995–96 (N.D.Ill.1944), *aff'd,* 149 F.2d 55 (7th Cir.), *cert. denied sub nom. Lorraine Castle Apts. Bldg. Corp., Inc. v. Mackiewich,* 326 U.S. 728, 66 S.Ct. 35, 9 L.Ed. 432 (1945). The Court finds no error in the bankruptcy court's ruling.

Relying on *In re Parr,* 13 B.R. 1010, 1020–21 (E.D.N.Y.1982), Farwest complains about the failure of the bankruptcy court to refer the charge of a violation of 18 U.S.C. § 152 to the United States Attorney pursuant to 18 U.S.C. § 3057. The bankruptcy court disposed of this contention as follows:

"The Court does not know enough with respect to what occurred to find, as Farwest requests, that there are reasonable grounds for believing that there has been a violation of 18 U.S.C. § 152 and to refer the matter to the United States Attorney pursuant to 18 U.S.C. § 3057.

"Whatever either Heller or Puro did was apparently done with the advice and knowledge of their respective attorneys, who are among the most respected lawyers appearing in this Court. It has long been recognized with respect to other types of violations of 18 U.S.C. § 152 that acting on the advice of counsel negates the presence of the necessary fraudulent intent. *E.g., Thompson v. Eck,* 149 F.2d 631, 633 (2d Cir.1945)."

25 B.R. at 641. Farwest has presented nothing to demonstrate that those findings are clearly erroneous.

### III.

Debtor next contends that the bankruptcy court erred in designating Windsor an inside creditor. It argues that insider status, 11 U.S.C. § 101(25)(E), should be determined as of the time the claim arises rather than at the time of the voting, the event used by the bankruptcy court. It asserts that Windsor and it dealt at arm's length when debtor guaranteed to Windsor the obligations of Hudson Feather & Down, another of Mr. Puro's businesses, because no insider relationship existed then between the parties. The Court adopts the bankruptcy court's opinion on this issue, 25 B.R. at 639–40.

■ To emphasize the correctness of the bankruptcy court's ruling, the Court notes that 11 U.S.C. § 1129(a)(10) is expansive; it states, "*any* insider". The use of the term "any" along with the absence of any other limiting modifier compels the conclusion that Congress did not intend to distinguish between insiders on the basis of when the claim arose.

### IV.

The debtor's next argument may presuppose what is not yet of record. The bankruptcy court denied confirmation in part because debtor had failed to sustain its burden of demonstrating that the creditors would receive less in a liquidation at that time. The order actually leaves this issue open pending further evidence:

"Because it is clear that further proceedings will have to be had herein, nothing said herein with respect to the second Deed of Trust held by Guy G. Joseph should be deemed final or to result in law of the case. The full facts respecting that second Deed of Trust will have to be explored more fully in proceedings to which Guy G. Joseph may well have to be made a party.

"Since the insufficiency of the record as to the current value of the debtor's building precludes a finding that the debtor has demonstrated that its plan satisfies § 1129(a)(7), it is unnecessary to evaluate the significance of the curious rise in the debtor's post-petition debt without any corresponding increase in its assets."

25 B.R. at 643; *cf. Fried v. Margolis,* 296 F.2d 670, 678 (2d Cir.1961) (district court may take additional evidence after receipt of the bankruptcy referee's report), *cert. dismissed sub nom. Wolf v. Weinstein,* 372 U.S. 633, 636, 83 S.Ct. 969, 972, 10 L.Ed.2d 33 (1963); *In re G.E.C. Securities, Inc.,* 223 F.Supp. 861, 863 (S.D.N.Y.1963) (same), *aff'd,* 331 F.2d 655 (2d Cir.1964). The significance and legal consequences of the debts/assets gap has not yet been determined. Additionally, debtor has produced nothing to demonstrate that the 1980 appraisal of its Denver Colorado plant was accurate in 1982 or is accurate now at the beginning of 1984. *See In re Duplan Corp.,* 9 B.R. 921, 928 (S.D.N.Y.1980) (the inclusion of inflation in the calculus of valuation is appropriate).

Contrary to debtor's assertion, the bankruptcy court was not obligated to accept the debtor's chief operating officer's (Arthur Puro's) testimony as the final word. *In re 716 Third Ave. Holding Corp.,* 225 F.Supp. 268, 271 (S.D.N.Y.1964), *rev'd on other grounds,* 340 F.2d 42 (2d Cir.1964), *cert. denied sub nom. A.G.V. Associates, Inc. v. Cross,* 381 U.S. 913, 85 S.Ct. 1535, 14 L.Ed.2d 434 (1965); *see In re Entertainment, Inc.,* 375 F.Supp. 390, 394 (E.D.Va. 1974) (credibility of the witnesses is a matter for resolution by the bankruptcy judge). The court did not speculate about matters

outside of the record, and the debtor has not met its burden of demonstrating error in the bankruptcy court's order upon this ground.[1]

## V.

Debtor next contends that the bankruptcy court erred in granting the Kerwin & Elliott law firm's motion to be added to the creditors' committee. It relies upon *Beale v. Snead,* 81 F.2d 970 (4th Cir.1936) (*per curiam*), *cert. denied,* 298 U.S. 685, 56 S.Ct. 956, 80 L.Ed. 1404 (1936), in which it was stated:

"As Mr. Catterall's claim was for services rendered the bankrupt as attorney, it was properly excluded from voting in the election of the trustee."

*Accord Matter of Montagna,* 31 B.R. 10 (Bkrtcy.W.D.Pa.1983); *see In re Deena Woolen Mills,* 114 F.Supp. 260, 268–69 (D.Me.1953); Bankruptcy Rule 207(d).

Initially, the bankruptcy court had excluded Kerwin & Elliott, debtor's former counsel, from the committee for the reasons stated in 25 B.R. at 644. The court changed its mind because debtor's subsequent opposition was grounded on lateness and not on the attorney-client privilege. The court then continued:

"As for the other grounds, the Court finds them unpersuasive. Confirmation of that plan is no longer imminent, and while Kerwin and Elliott's motion may be tardy, they advised the Court informally, almost immediately following the filing of Featherworks' petition, of their wish to be included on the creditors' committee.

"Since the committee is not functioning and seems unlikely ever to function because of the insignificant nature of the claims of most creditors, whether Kerwin and Elliott becomes a member appears to be of little practical significance, ne-

vertheless Kerwin and Elliott will be added to the creditors' committee."

25 B.R. at 645. Debtor has presented nothing to demonstrate that these findings are clearly erroneous.

The remaining issue is difficult to fathom in light of the record. It appears, however, that the debtor is trying to convert an attorney's obligation not to be an accessory to fraud into a breach of the attorney-client privilege because the purported confidences relate to the attorney's collection of a marginally larger portion of his fee from a bankrupt. This argument ignores the rules of appellate review.

The transcript of the July 27, 1972 hearing discloses that attorney Tom Kerwin, who had represented the debtor, sought to apprise the bankruptcy court of what he believed to be fraud and misconduct perpetrated by Arthur Puro. The disclosures were made in support of Kerwin's request to subordinate Windsor's claim against the debtor. The bankruptcy court has provided a lengthy recitation of the evidence educed in support of Kerwin's request and its reasoning and analysis, which resulted in denying the request.

Debtor has not pointed to any part of the transcript which reveals privileged information. There were but two relevant objections during Kerwin's testimony, and in response, it appears that Kerwin did not reveal privileged communications. Rather, he had deduced from facts contained in depositions and court records contained in other litigation that Arthur Puro had settled litigation between the debtor and a Mr. Joseph in a manner and time frame calculated to prejudice the claim of Farwest. When Kerwin refused to engineer the settlement, he either resigned or was fired.

The other matters Kerwin related about Puro's alleged misdeeds were hardly confidential as evidenced by Mr. Schachne's tes-

1. The Court must emphasize that the bankruptcy court has not precluded confirmation of this plan. Upon the submission of appropriate additional evidence the debtor may yet prevail; however, the record discloses nothing to prove that the bankruptcy court's determination that the circumstances require additional evidence is erroneous. Therefore, the parties' extensive arguments, charges, and countercharges contained in their briefs, are more properly directed to the bankruptcy court.

timony. *See In re Fisher,* 51 F.2d 424, 425 (S.D.N.Y.1931). Schachne had sold out to Puro, assertedly under pressured circumstances, and prior thereto had managed the debtor and had done business with Puro's businesses in that capacity. The net assertion of the evidence was that Puro had illicitly manipulated a pyramid of businesses, some in bankruptcy, to his own personal advantage and to the disadvantage of Farwest and Kerwin, and therefore, that Windsor, run by Puro and owned by his wife and daughter, should have its claim equitably subordinated. In spite of the lack of specificity in debtor's brief upon this issue,[2] the Court will assume that debtor actually objects to the following ruling:

> "On this record, the application of Kerwin and Elliott to disallow or subordinate Windsor's claim is denied. If Kerwin and Elliott have any evidence that they were unable to offer because the Court erroneously believed the attorney-client privilege to be a bar, they may move to reopen for consideration of such evidence."

25 B.R. at 649.

There is no motion to reconsider pending on the record. To the extent that confirmation was denied upon other legitimate grounds, this issue is of no consequence. *See In re Knapp,* 319 F.Supp. 1070, 1073 (S.D.Ill.1970); *In re Farmers Federation Cooperative, Inc.,* 242 F.Supp. 400, 401 (W.D.N.C.1965). Moreover, this Court cannot presume that the bankruptcy court will err in its rulings upon objections to the admission of evidence, which objections have yet to be made.[3] Based upon the record, the debtor seeks an advisory opinion, which the Court declines to render.

For all of the reasons set out above, the orders of the bankruptcy court in these two appeals are affirmed, and the appeals are ordered consolidated.

SO ORDERED.

---

2. The notice of appeal is very specific. Debtor does not challenge the bankruptcy court's denial of Kerwin's motion to subordinate Windsor's claim. There has been no showing of any harm upon this issue.

3. The Court's ruling is premised in part upon the infinite variety and number of possible objections that could be made with respect to communications between a debtor and its attorney. *E.g., In re D.H. Overmyer Telecasting Co., Inc.,* 470 F.Supp. 1250 (S.D.N.Y.1979); *In re Blier Cedar Co., Inc.,* 10 B.R. 993 (Bkrtcy.D. Me.1981).