In re MCORP FINANCIAL, INC., MCorp Management, and MCorp, Debtors.

Bankruptcy Nos. 89–02312–H3–11, 89–02324–H5–11, 89–02848–H2–11 and 89–02312–H3–11.

United States Bankruptcy Court, S.D. Texas, Houston Division.

Jan. 7, 1992.

D.J. Baker, Melanie Grey, Weil, Gotshal & Manges, Houston, Tex., for debtors.

Matthew B. Probus, Law Office of Matthew B. Probus, Houston, Tex., for Jerry Gates.

## MEMORANDUM OPINION

LETITIA Z. CLARK, Bankruptcy Judge.

Jerry Gates has filed a Motion to Withdraw Negative Vote on Class 9 Claim and Substitute Positive Vote on Class 9 Claim, ("Motion to Change Vote") on plan confirmation. After considering the pleadings, the evidence at hearing, and arguments of counsel, the court makes the following Findings of Fact and Conclusions of Law, and enters a separate Judgment denying the Motion. To the extent any of the Findings of Fact herein are construed to be Conclusions of Law, they are hereby adopted as such. To the extent any Conclusions of Law herein are construed to be Findings of Fact, they are hereby adopted as such.

### Findings of Fact

1. On September 5, 1989, Gates filed his claim against the Debtors in the amount of $207,196.00, to which the Debtors objected. Gates and Peter Bartholow, President and CEO of MCorp, discussed settlement of the Gates claim on September 25, 1991 to no avail. Gates' claim was placed in Class 9 and on October 15, 1991, Gates voted his Class 9 ballot to reject the proposed plan. Gates subsequently cast an additional ballot rejecting the plan regarding his equity claim (Class 13). The voting deadline for plan purposes was November 5, 1991.

2. At some subsequent point Gates and Debtors reached an agreement to treat Gates' claim as an allowed Class 13 Senior unsecured claim in the amount of $100,000.

3. According to the agreement, the Debtors would agree not to pursue a claim against MBank Corpus Christi, the Debtors would agree that Gates will retain the right to assert the difference between the compromise amount and the original amount in the form of an offset against any liability that any party might assert against him in the future arising under the MCorp Mortgage & Real Estate Loan Plan ("MREP"), and the Investment Loan Plan ("ILP"); and Debtors would agree that they will not transfer to the FDIC or any entity controlled by the FDIC, any MREP or ILP

loan payable by the claimant to the Debtors.

4. In addition, Gates would agree to withdraw his negative vote to the Debtors' plan on his Class 9 claim and change that vote to a positive vote, and the objection to Gates' claim would be withdrawn.

5. Gates alleges that if he is not allowed to change his vote, then he is concerned that plan confirmation may be delayed, with a resulting adverse effect on his ability to recover on his Class 13 claim and obtain clarification of his affirmative defenses and rights of offset relating to his ILP and MREP loans.

6. The motion before the court asserts that an agreement resolving the objection was reached on November 5, 1991—the deadline for voting. The Debtors sent Gates a new Class 9 ballot for casting his changed vote; however, he was hoping to receive "my agreement in writing" (Gates Deposition, p. 25, 1. 11–12) but did not. On November 26, 1991 he responded to a call from Bartholow. Gates then executed this ballot on or after November 26, 1991.

7. During testimony on November 26, 1991 on plan confirmation, Mark Asbury, the representative of Ameritrust, the Debtors' ballot tabulator, addressed the rules which this court had approved for tabulating votes cast on the plan. On cross-examination, Asbury admitted that if the rules had been followed in tabulating written Class 9 ballots, including counting Gates as a negative vote as of November 5, 1991, that class would be a rejecting rather than accepting class. Confirmation Hearing Testimony of Asbury, 11/26/91, pp. 67–70.

8. Gates did not appear at the hearing on the Motion to Change Vote. Gates testified in his deposition that he had elicited assurance on November 26, 1991 from Bartholow that an agreement had been reached. After receiving this assurance, Gates executed the new ballot and sent it to the Debtors (Plaintiff's Exhibit 9, Deposition of Jerry Gates Taken on December 4, 1991, at pp. 33–34). Gates has not sought to submit any new ballot replacing his rejection in the equity class (Class 13).

9. It is noteworthy that on November 27, 1991, one day after testimony from Asbury, the Debtors announced in court that an agreement had been reached with Gates, and that the instant motion had been filed.

### Conclusions of Law

■ 1. Bankruptcy Rule 3018, designated "Acceptance or Rejection of Plans" was amended, effective August 1, 1991 and governs all proceedings in bankruptcy cases thereafter commenced and, insofar as just and practicable, all proceedings in bankruptcy cases then pending. Subdivision (a) was specifically amended to allow the court to permit a creditor or equity security holder to change or withdraw an acceptance or rejection for cause shown whether or not the time fixed for voting has expired. The prior rule allowed a change of vote for cause but only within the time fixed for acceptance or rejection of a plan.

■ 2. A change of vote may not occur as a matter of right. This is to avoid the possibility of an entity's changing its vote based upon consideration or promises outside of the plan. Vote changing is the exception, not the rule. *In re Featherworks Corp.*, 36 B.R. 460, 462 (E.D.N.Y. 1984). Changes should only be permitted in exceptional circumstances. *In re Jartran*, 44 B.R. 331 (Bankr.N.D.Ill.1984).

3. Bankruptcy Rule 3018(a) permits a change in vote to occur only on a showing of cause. The test for determining whether cause has been shown should not be a difficult one to meet. As long as the reason for the vote change is not tainted, the change of vote should usually be permitted. The court must only ensure that the change is not improperly motivated. *See*, 8 Collier on Bankruptcy, ¶ 3018.03[4], p. 3018–10 (15th ed. 1991).

4. Examples of reasons for a change of vote might include a breakdown in communications at the voting entity, misreading the terms of the plan, or execution of the first ballot by one without authority. In such circumstances, the vote could be changed in order to allow the voting entity to intelligently express its will. Due to the

recent amendment to B.R. 3018, permission to change a vote may be sought at any time. See Collier, *supra*.

■ 5. Gates, on advice of counsel (see Gates deposition, pp. 6–8) originally rejected the plan. He later reached agreement with Debtors, and has sought to change his vote. There is no allegation that he misunderstood the plan at the time of his original vote. The change was prompted by a subsequent agreement, and was made in writing only after testimony in the confirmation hearing which made the ballot important. The timing of the change is highly · suspect, and the evidence does not overcome the possibility of improper motivation.

6. The Motion to Change Vote pursuant to Bankruptcy Rule 3018(a) is denied, as there has been no showing sufficient to demonstrate that the requested change is not improperly motivated.