**In re OBT PARTNERS, an Illinois limited partnership, Debtor.**

**Bankruptcy No. 96 B 24353.**

United States Bankruptcy Court,
N.D. Illinois,
Eastern Division.

Nov. 19, 1997.

**20.** The proxy given by Bill Rusciolelli in the amount of $52,500 was *also not signed or acknowledged.* However, it was disallowed for improper solicitation by Fibre–Craft; the claim was against Crafts.

Leroy G. Inskeep, Chicago, IL, for Movant.

Daniel A. Zazove, Chicago, IL, for Respondent.

## MEMORANDUM OPINION AND ORDER

ERWIN I. KATZ, Bankruptcy Judge.

This matter comes before the court on the objection of Principal Mutual Life Insurance Company ("Principal"), a secured creditor, to the vote of creditor DuPage County. The Debtor, OBT Partners, (hereinafter referred to as "the Debtor" or "OBT") seeks confirmation of its plan under 11 U.S.C. § 1129(b). Principal objects to the plan. DuPage was the only impaired class who voted for the plan. The issue before the court is whether the vote of a creditor whose debt has been paid after the vote, but before confirmation, should be counted.

This matter is before the Court on cross motions for summary judgment. The secured creditor, Principal Mutual Life Insurance Company ("Principal"), takes the position that as a matter of law, Class 1,

consisting of DuPage County's 1996 real estate tax claim, cannot be considered as an impaired accepting class which could allow the Debtor to seek confirmation of its amended plan under section 1129(b) of the Bankruptcy Code. The Debtor also moves for summary judgment, seeking an order that declares Class 1 to be an impaired accepting class. For the reasons stated below, the Court grants the Debtor's cross motion for summary judgment and denies Principal's motion for summary judgment.

## Jurisdiction

The Court has jurisdiction over this matter under 28 U.S.C. § 1334(b) as a matter arising under section 1129(b) of the Bankruptcy Code. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L) as a proceeding to determine whether an impaired accepting class exists such that confirmation of a plan of reorganization can be sought under section 1129(b) of the Bankruptcy Code. This matter is before the Court pursuant to Local Rule 2.33 of the United States District Court for the Northern District of Illinois automatically referring bankruptcy cases and proceedings to this Court for hearing and determination.

## Standards for Summary Judgment

To prevail on a motion for summary judgment, the movant must meet the criteria set out in Rule 56 of the Federal Rules of Civil Procedure, made applicable to adversary proceedings under the Federal Rule of Bankruptcy Procedure 7056. Summary judgment is appropriate if the entire record, including pleadings, depositions, answers to interrogatories, admissions on file, and any affidavits, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c); Fed.R.Bankr.P. 7056; *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).

Summary judgment is granted to avoid unnecessary trials when there is no genuine issue of material fact in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 585–86, 106 S.Ct. 1348, 1355, 89 L.Ed. 538 (1986). The movant bears the burden to show that no genuine issue of material fact is in dispute. *Anderson,* 477 U.S. at 248, 106 S.Ct. at 2510; *Matsushita,* 475 U.S. at 585–86, 106 S.Ct. at 1355–56; *Celotex,* 477 U.S. at 322, 106 S.Ct. at 2552.

## Undisputed Facts

This is a single asset real estate case, commenced when the Debtor, the sole beneficiary of an Illinois land trust, filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code on September 16, 1996. The Debtor is an Illinois limited partnership that operates a first-class commercial office building at 1901 South Meyers Road, Oakbrook Terrace, Illinois (the "Property"). Title to the Property is held in an Illinois land trust, by LaSalle National Bank, as Trustee under Trust No. 108702, dated July 15, 1984.

The schedules filed by the Debtor, in accordance with Fed. R. Bankr.P. 1007, listed DuPage County as a secured creditor, with a claim in the amount of $767,042.18. Principal is a secured creditor of the Debtor, since it holds a validly perfected first priority lien on the Property and on the rents generated by the Property.

On April 16, 1996, Principal commenced a foreclosure action against the Property in the Circuit Court of DuPage County, due to the Debtor's default under the terms of the notes and Mortgage with Assignment of Rents ("Mortgage") evidencing Debtor's obligations to Principal. Axiom Real Estate Management was appointed as the receiver for the Property.

Several months later, on August 6, 1996, a judgment of foreclosure was entered. According to the terms of that judgment, Principal had a valid first priority lien on the Property and was owed nearly $55 million. Shortly thereafter, on September 16, 1996, the Debtor filed a voluntary chapter 11 petition.

On February 3, 1997, Principal redeemed the past-due 1994 real estate taxes assessed against the Property by paying the DuPage County Clerk $855,872.41. Between January 31, 1997 and February 10, 1997, Principal

also purchased a number of unsecured claims for their full face value.[1] Principal also purchased the mechanic's lien claims held by E. Stone, Inc. and Ascher Brothers Co, Inc.

On March 4, 1997, the Debtor filed an amended plan of reorganization. It provided, inter alia, that Class 1, DuPage County's statutory lien claim for 1996 real estate taxes on the Property, would be paid in 12 equal consecutive monthly installments beginning 30 days after the plan's consummation date. The plan also provided that general unsecured claims would be paid in full.

This Court set March 31, 1997 as the last date by which creditors could file a proof of claim. April 15, 1997 was established as the last date creditors could vote to accept or reject the amended plan of reorganization.

The claim of DuPage County was classified as Class 1. On April 1, 1997, Class 1 voted to accept the plan.

When balloting was completed on April 15, 1997, Class 1 was the only class voting in favor of the plan.[2] Classes 2 through 7, which were all owned by Principal, voted against the Plan. Principal also voted those claims in Class 8 which it had acquired against the plan. The Class 8 creditors whose claims had not been purchased by Principal voted to accept the amended plan. Because fewer than one-half of the creditors in number and less than two-thirds in dollar amount of claims voted to accept the amended plan, Class 8 was deemed to have rejected the amended plan.[3] 11 U.S.C. § 1126(c).

On May 1, 1997, one month after Class 1 cast its vote and two weeks after the voting deadline, Principal paid the amount owed for 1996 real estate taxes on the Property, thereby satisfying Class 1's claim.[4] In contrast to its actions in connections with other claims Principal did not purchase the Class 1 claim, did not take an assignment of the Class 1 claim, and did not seek to become subrogated to the rights of the Class 1 holder. On May 30, 1997, Principal filed its objection to the claim of DuPage County based solely on its assertion that DuPage County is no longer a creditor.

No motions to extend the voting deadline or to reopen the balloting process were filed,

---

**1.** Principal purchased the following claims: BDO Seidman ($4,285); Burns International Security Services ($31,852.53); Carpets of Elmhurst ($28,988.51); Cushman & Wakefield of Illinois, Inc. ($30,684); Klean–Ko, Inc. ($32,325.22); Montgomery Kone, Inc. ($7,962.54); and U.S. Equities Realty, Inc. ($16,418.82).

**2.** Ballots were cast as follows:

| Class 1 | DuPage County, 1996 Real Estate Taxes, secured | accepts |
|---|---|---|
| Class 2 | First Lien Co., 1994 Real Estate Taxes, secured | unimpaired |
| Class 3 | Principal's First Mortgage Note, secured | rejects |
| Class 4 | E. Stone, Inc., Mechanic's Lien, secured | rejects |
| Class 5 | Ascher Brothers, Mechanic's Lien, secured | rejects |
| Class 6 | Principal's First Mortgage Note Deficiency, unsecured | rejects |
| Class 7 | Principal's Second Mortgage Note, unsecured | rejects |
| Class 8 | Trade Claims, unsecured | rejects |
| Class 9 | Insider Claims, unsecured | vote irrelevant |
| Class 10 | Security Deposits, unsecured | unimpaired |
| Class 11 | Limited Partnership Interests | vote irrelevant |
| Class 12 | General Partnership Interests | vote irrelevant |

**3.** The Debtor filed "Debtor's Objections to Claims and Motion to Designate Claims as Excluded from Balloting in Connection with Debtor's Amended Plan of Reorganization" alleging that the claims purchased by Principal should be designated under 11 U.S.C. § 1126(e) since Principal purchased and voted the Class 8 claims in bad faith. This motion remains pending before this court. The parties have agreed that those objections should be held in abeyance pending this decision on the cross-motions for summary judgment.

**4.** The parties do not agree whether Principal had the right under the Mortgage to pay these taxes. Because resolution of this issue is not necessary to a resolution of the instant cross motions for summary judgment, the court expresses no opinion regarding the propriety of Principal's payment to DuPage County.

nor was any motion filed to change or withdraw DuPage County's vote.

The Debtor seeks to have its amended plan confirmed. Because all classes impaired under the plan did not vote in favor of the plan, the Debtor seeks confirmation under section 1129(b) of the Bankruptcy Code, colloquially known as the "cram down" method of confirmation.

### Discussion/Conclusions of law

Section 1129(b) of the Bankruptcy Code provides in relevant part:

> (b)(1) Notwithstanding section 510(a) of this title, if all of the applicable requirements of subsection (a) of this section other than paragraph (8) are met with respect to a plan, the court, on request of the proponent of the plan, shall confirm the plan notwithstanding the requirements of such paragraph if the plan does not discriminate unfairly, and is fair and equitable, with respect to each class of claims or interests that is impaired under, and has not accepted, the plan.

In order to proceed under this provision of the Bankruptcy Code, there must be at least one impaired class of claims that has voted in favor of the plan. 11 U.S.C. § 1129(a)(10). Principal argues that Class 1 cannot be the required impaired assenting class because (1) Class 1 is not a prepetition claim; (2) if Class 1 has any claim, it has an administrative claim that is not entitled to vote under section 1123 of the Bankruptcy Code; and (3) if Class 1 is a prepetition claim, Class 1 is presently unimpaired because Principal has paid the Class 1 claim in full. Thus, because Class 1 will receive no distribution under the amended plan and has no stake in the confirmation or consummation of the amended plan, its vote for the amended plan should not be considered in determining whether an impaired class has voted to accept the amended plan.

The Debtor, on the other hand, argues that on the voting date Class 1 had a prepetition claim that was impaired under the terms of the amended plan. The Debtor further argues that whether an impaired class voted to accept the amended plan must be determined by the facts as they existed on April 15, 1997, the voting deadline, otherwise there would be no certainty in the reorganization process and manipulation of the plan process would be encouraged.

### A Portion of the Tax Claim is a Prepetition Claim

The Debtor filed its Chapter 11 petition on September 16, 1996. DuPage County's claim is based on 1996 real estate taxes. The taxes were due and payable in two installments, on June 2, 1997 and September 2, 1997. The parties agree that May 1, 1997, was the first date on which tax bills for property taxes were made available as well as the first date on which the DuPage County Treasurer would accept tax payments. Principal paid both installments of the 1996 real estate taxes on May 1, 1997.

Principal argues that DuPage County does not have a prepetition claim. According to Principal, a distinction must be drawn between the lien and the taxes themselves. The lien was never impaired under the plan because under the terms of the plan, the taxes would be fully paid before DuPage County would have had the right, under 35 ILCS 200/21–75, to foreclose its lien. Principal further argues that the taxes themselves were not "incurred" prepetition because taxes are not incurred until they are due and capable of being paid. Principal also argues that DuPage County's claim is not impaired since there is no danger the claim will not be paid in full.[5]

A "claim" is broadly defined, in section 101(5) of the Bankruptcy Code, as:

> (A) right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured...

Under Illinois law, taxes are assessed on a calendar year basis and are billed the following year. 35 ILCS 200/1–

---

5. Principal does not assert that Class 1 is artificially impaired. Consequently, this court does not address the issue.

155; 35 ILCS 100/21–30. The taxing authority generally bills the property owner for the taxes in two installments. 35 ILCS 200/20–210. The real estate taxes on the Property are assessed on a calendar year basis, but are billed and payable at a later time. 35 ILCS 200/1–155; 35 ILCS 200/21–30. The property owner is liable to the taxing authority for the taxes. 35 ILCS 200/9–175; *In re Handy Andy Home Improvement Centers, Inc.*, 196 B.R. 87 (Bankr.N.D.Ill.1996). Unpaid taxes become a lien on the property as of January 1 of the year in which the taxes are assessed, even though the amount is unknown and undetermined and the taxes not yet payable. 35 ILCS 200/21–75; *Handy Andy*, 196 B.R. 87.

Courts typically confront the issue of when taxes accrue, as prepetition or postpetition obligations, in the context of section 365(d)(3) of the Bankruptcy Code.[6] Although this court confronts the issue of when taxes accrue in a different context than section 365(d)(3) of the Bankruptcy Code, the analysis is essentially the same.

 The majority of courts find that the billing date of the taxes is not controlling as to the determination of when taxes arise. These courts find that taxes accrue on a daily basis from the first day of the lease. Section 365(d)(3) of the Bankruptcy Code requires that the debtor must timely pay those "obligations ... arising from and after the order for relief ..." Therefore, the debtor must pay only those real estate taxes that accrue postpetition. Those that have accrued before the filing date, although not payable and not billed until after the filing date, are considered prepetition claims. *See, e.g., In re Handy Andy Home Improvement Centers, Inc.*, 196 B.R. 87 (Bankr.N.D.Ill.1996), *aff'd* 1997 WL 619824 (N.D.Ill.); *In re McCrory*, 210 B.R. at 937; *Child World, Inc. v. Campbell/Massachusetts (In re Child World, Inc.)*, 161 B.R. 571, 576–77 (S.D.N.Y.1993); *In re*

*Victory Markets, Inc.*, 196 B.R. 6, 10 (Bankr. N.D.N.Y.1996); *In re Warehouse Club, Inc.*, 184 B.R. 316, 317 (Bankr.N.D.Ill.1995); *In re All For A Dollar, Inc.*, 174 B.R. 358, 361–62 (Bankr.D.Mass.1994); *In re Almac's, Inc.*, 167 B.R. 4, 7 (Bankr.D.R.I.1994). The minority find the date on which the taxes are billed controlling. *See e.g., In re Duckwall–ALCO*, 150 B.R. at 974–76; *In re Krystal Co.*, 194 B.R. 161, 162–64 (Bankr.E.D.Tenn. 1996).

This court, following the majority rule, finds that the accrual theory is more sensible. *See discussion in National Terminals Corp. v. Handy Andy Home Improvement Centers, Inc.*, 1997 WL 619824 (N.D.Ill.). Thus, 1996 real estate taxes are a secured, prepetition claim for those taxes that accrued from January 1, 1996 through and including the petition date, September 16, 1996. The balance of the 1996 real estate taxes are a secured, postpetition claim.[7]

*The Tax Claim is Impaired.*

 The Class 1 claim is impaired since the legal rights of DuPage County are altered. DuPage County is legally entitled to have the taxes paid in two installments, on June and September 3, 1997. The Plan proposes to pay the taxes in 12 monthly installments, thereby altering their due dates. As the Debtor accurately notes, "[A] class is impaired if there is 'any alteration of a creditor's rights, no matter how minor.'" *Matter of Woodbrook Assocs.*, 19 F.3d 312, 321 (7th Cir.1994) *citing In re Windsor on the River Assocs., Ltd.*, 7 F.3d 127, 130 (8th Cir.1993). In fact, a claim is impaired even if the claimant's rights are improved. *See In re Wabash Valley Power Association*, 72 F.3d 1305, 1321 (7th Cir.1995); *In re L & J Anaheim Associates*, 995 F.2d 940 (9th Cir.1993)(any change in creditor's contractual rights, even if the change benefits the creditor, constitutes impairment); *In re Rhead*, 179 B.R. 169 (Bankr.D.Ariz.1995)(any change in the credi-

---

6. Section 365(d)(3) of the Bankruptcy Code provides in relevant part that:

 The trustee shall timely perform all the obligations of the debtor, except those specified in section 365(b)(2), arising from the order for relief under any unexpired lease of nonresidential real property, until such lease is assumed

or rejected, notwithstanding section 503(b)(1) of this title ...

7. DuPage County's claim is partially prepetition and partially postpetition. Inasmuch as the DuPage County claim is classified separately, and inasmuch as both claims are secured, the division has no impact on the issues presented.

tor's rights, for better or for worse, constitutes impairment). Thus, the change in the date tax payments will be received by DuPage County is sufficient to impair DuPage County's claim.

Claims of a taxing body can be the accepting class of impaired creditors. *See, e.g., In re Curtis Center Ltd. Partnership,* 192 B.R. 648 (Bankr.E.D.Pa.1996)(where the taxing body can enforce a tax lien against the property, the taxing body has a claim that can be impaired and thus enable it to be the consenting class of creditor necessary under section 1129(a)(10)).

Thus, DuPage County's claim for 1996 real estate taxes constitutes a prepetition claim that is impaired by the terms of the amended plan.

*Creditors Must Qualify as of the Ballot Date to be Entitled to Vote on a Plan.*

Principal argue that Class 1 cannot be the impaired assenting class necessary to invoke the provisions of section 1129(b) of the Bankruptcy Code because it has satisfied Class 1's claim. Class 1 will receive no distribution under the plan, and has no economic stake it the outcome. Because only those effected by the plan should vote, the vote should be discounted.

The Debtor, on the other hand, argues that if the court did not count DuPage's vote because Principal satisfied DuPage's claim after the voting deadline, there would be no certainty in the reorganization process and this uncertainty would encourage the manipulation of the plan process.

 While Principal's argument is facially appealing, this court finds that Class 1's vote cannot be ignored simply because Principal satisfied Class 1's claim after the vote. This case is not about whether a vote can be changed or withdrawn after the voting deadline, nor does this case concern what Principal's rights would be if it had taken an assignment of DuPage County's claims. This case simply concerns the effect on a previously cast vote if the claim is paid in full after the voting deadline.

Rule 3018 provides that a plan may be accepted within the time set by court order. This court entered an order specifying that the deadline for accepting or rejecting the plan was April 15, 1997. As of April 15, 1997, DuPage County was a creditor, had a claim which had not been paid, and had voted to accept its treatment under the amended plan. No provision of the Bankruptcy Code or the Bankruptcy Rules requires that a creditor must be impaired on the confirmation date. In fact, Rule 3018 implies quite the opposite. As to equity security holders, Rule 3018 provides that an equity security holder can vote only if it is a shareholder of record on the date the order approving the disclosure statement is entered. Fed. R. Bankr.P. 3018(a). Thus, a person who is a shareholder on the date the disclosure statement is approved can vote on the plan, and the vote remains valid even if the shareholder sells its stock the following week.

The court's holding is further supported by that portion of Rule 3018 concerning the change or withdrawal of votes.[8] A leading commentator has explained that cause for changing or withdrawing a vote can be found if the vote did not express the creditor's desires at the time the vote was cast. 8 Collier on Bankruptcy, ¶ 3018.3[4], at 3018–10 (15th ed.1990). *See also In re MCorp Financial, Inc.,* 137 B.R. 237, 238–9 (Bankr. S.D.Tex.1992); *In re Kellogg Square Partnership,* 160 B.R. 332 (Bankr.D.Minn.1993). Thus, no cause exists to change a vote because a claim has been purchased by an entity that has a different intent. As the court in *Kellogg Square* noted in denying a purchasing creditor's motion to change votes accepting the plan: "[T]he process by which creditors respond to the solicitation of a plan proponent must be concluded in a fixed and objective fashion, or there would be no certainty in the dynamics of reorganization under Chapter 11." Thus, if the vote cast by a creditor expressed its will at the time the vote was cast, the vote cannot be later changed. *Kellogg Square,* 160 B.R. at 332.

---

**8.** In pertinent part, Rule 3018(a) provides:
... For cause shown, the court, after notice and hearing may permit a creditor or equity security holder to change or withdraw an acceptance or rejection....

The voting deadline is not a line drawn in the sand. It is pivotal to the sequence of the plan process. For example, a voting deadline must be set before a disclosure statement can be approved. Fed. R. Bankr.P. 3017(c). The voting deadline is analogous to rules regarding record date of ownership for stockholders in publicly traded companies to receive dividends and/or vote for the board of directors. Those persons registered on the books of the company as of a certain date are entitled to vote for board or receive distribution of dividends. 805 ILCS § 5/7.25 [9]. A vote for a director is not nullified simply because stock was sold after the vote occurred.

The effect of Principal's argument would be to shift the carefully constructed balance of power between the debtor and creditor sharply toward the creditor. A creditor, even a (partially) secured creditor in a single asset real estate case does not have veto power. *In re SM 104 Ltd.*, 160 B.R. 202, 218 (Bankr.S.D.Fla.1993). If a creditor could await the outcome of voting before taking action to promote its interests, then a creditor would have several opportunities to block confirmation of a plan, instead of the one provided by the terms of the Bankruptcy Code. For example, an undersecured creditor who wanted to block confirmation of a plan could purchase just enough claims in the classes it thinks would vote for the plan to control the outcome of the voting of those classes and hope that all other classes entitled to vote also vote against the plan. But, if the creditor guesses wrong or wants to conserve its money, then after the votes have been counted, the creditor could then go and satisfy just enough of the claims in each accepting class to block confirmation. Thus, the creditor would have had an additional opportunity to influence or control the voting on the plan, and hence the outcome of confirmation. In addition, if Principal's argument were accepted, the plan negotiation process

could be perverted. A debtor negotiates with its creditors in developing a plan of reorganization, to gain the creditors' support. The end result should be a plan that the parties involved believe is a good deal. If a creditor could come in, after voting on the plan is complete, and satisfy the claims of some creditors so that their vote is not counted, a debtor will not have the incentive to negotiate in good faith since its efforts will have been for naught. This will result in less economically efficient reorganization plans.

## CONCLUSION

For the reasons stated above, the Court holds that the Class 1 vote is a valid impaired class vote in favor of the plan.

9. 805 ILCS § 7.25 provides:
Fixing record date. For the purpose of determining shareholders entitled to notice of or to vote at any meeting of shareholders, or shareholders entitled to receive payment of any dividend, or in order to make a determination of shareholders for any other proper purpose, the

board of directors of a corporation may fix in advance a date as the record date for any such determination of shareholders ... When a determination of shareholders entitled to vote at any meeting of shareholders has been made as provided in this Section, such determination shall apply to any adjournment thereof ...