**In re HOUSER SHOES, INC., Debtor.**

**Florsheim Group, Inc., Appellant,**

v.

**Houser Shoes, Inc., Appellee.**

**No. 1:99CV128.**

United States District Court, W.D. North Carolina, Asheville Division.

March 9, 2000.

Edward C. Hay, Jr., Asheville, NC, Dennis E. Quaid, Michelle G. Novick, Chicago, IL, for plaintiff.

David G. Gray, Asheville, NC, for defendant.

## MEMORANDUM AND ORDER

THORNBURG, District Judge.

**THIS MATTER** is before the Court on the Appellant's appeal from the decision of United States Bankruptcy Court Judge Marvin Wooten finding that the Florsheim Group, Inc., (Florsheim) was appropriately designated and treated as a Class 3 creditor in the above-captioned bankruptcy proceeding.

## I. STANDARD OF REVIEW

The conclusions of law of the bankruptcy court are reviewed *de novo. In re Deutchman,* 192 F.3d 457, 459 (4th Cir.1999). Reversal of the findings of fact of the bankruptcy court may occur only where the findings are clearly erroneous. *Id.* Findings of fact are clearly erroneous "when, although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *In re Green,* 934 F.2d 568, 570 (4th Cir.1991) (citing *In re First Federal Corp.,* 42 B.R. 682 (W.D.Va.1984)). As stated by the Supreme Court:

If the [lower court's] account of the evidence is plausible in light of the record viewed in its entirety, the [appellate court] may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently. Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous.

*Anderson v. Bessemer City,* 470 U.S. 564, 573–74, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985). In addition, due regard must be given to the opportunity of the bankruptcy court to judge the credibility of witnesses. *In re Tudor Assoc., Ltd., II,* 20 F.3d 115, 119 (4th Cir.1994); Bankr.R. 8013.

## II. FINDINGS OF FACT

Houser Shoes, Inc. (Debtor) filed a voluntary petition for reorganization pursuant to Chapter 11 of the Bankruptcy Code on December 4, 1997. Appellant's Certification of Record on Appeal 1 (Appellant Record). On February 2, 1998, Florsheim filed a proof of claim in the amount of $209,702.40 as an unsecured nonpriority creditor for uncollected accounts receivable. *Id.,* at 2. Florsheim served as a member of the creditors' committee for the Debtor. *Id.,* at 3, p. 11. The Debtor filed an Approved Amended Disclosure Statement on September 15, 1998, which included the following representations:

The Creditors Committee has and will have an active participation in the disclosure statement and plan process to assist the debtor-in-possession and protect the general creditors' interest. The Creditors Committee has negotiated the unsecured payout for the unsecured creditors. The Creditors Committee has negotiated this plan with the debtor/debtor-in-possession for the benefit of all creditors, strongly supports the plan, and encourages the creditors to accept the plan.

*Id.* The Statement called for three classes of claims: Class 1, priority claims; Class 2, impaired unsecured claims; and Class 3, impaired reduced unsecured claims. *Id.,* at p. 8–9. Class 2 creditors would ultimately receive a payout of 65 percent of their claims; Class 3 creditors would receive one lump sum payment of 25 percent of their claims, not to exceed the sum of $7,500. *Id.* On the same date as the Statement was filed, the Debtor's Amended Chapter 11 Plan was filed which reiterated the above. *Id.,* at 4. On September 17, 1998, the Court approved the Disclosure Statement and ordered that the Plan, the Statement and a ballot be sent to all credi-

tors with a deadline of October 14, 1998, for acceptance or rejection of the Plan. *Id.,* at 5.

On October 14, 1998, Florsheim filed its ballot accepting the Plan. The first page of the ballot did not contain any designation that it related to any class of claims. On the first page of the ballot, Florsheim noted it held $209,702.40 in unsecured accounts receivable and accepted the Plan. *Id.,* at 7. The second page of the ballot was captioned "Class 3 Claimants" and contained an explanation that these creditors with claims of $30,000 or less would receive a "one-time lump-sum payout." *Id.* In addition, the ballot contained the following language: *"Additionally, creditors with higher claim amounts may join this class by reducing their claim amount to $30,000. See Class 3 of the Plan for details." Id.* A Florsheim representative signed this form. *Id.*

On November 17, 1998, a Ballot Tally was filed in the Bankruptcy Court. Appellee's Certification of Record on Appeal 1 (Appellee Record). Attached to the tally were copies of the ballots mailed in by creditors. *Id.* Florsheim's ballot was counted as one of 25 Class 3 creditors accepting the Plan. *Id.* The Plan was confirmed on December 3, 1998. Appellant's Record, at 9. On December 10, 1998, a check in the amount of $7,500 was mailed to Florsheim at the address designated on its ballot along with a letter stating, "Enclosed find check representing payment in full to you of your claim *pursuant to Class 3* of Houser Shoes, Inc.'s confirmed Chapter 11 plan." Appellee's Record, at 2 (emphasis added). The check, which contained the notation "PAYMENT IN FULL CLASS 3 CHAPTER 11," was negotiated on December 18, 1998. *Id.*

On December 22, 1998, Scott Schlessinger, Corporate Collection Manager, wrote to the Debtor's attorney as follows:

The letter at the bottom of this check stated payment in full, Class 3 Chapter 11.[ ] Mr. Gray, we assume that since there was not (sic) signature block on the first page, that the signature block on the second page was where we were to sign. As you can see with the attached documents we filled out the Class 2 Section of this ballot and the Class 3 section was left blank. We would appreciate a check for the difference that we would (sic) to receive under a Class 2 filing.

Appellant Record, at 14. On April 14, 1999, Florsheim filed a motion for a determination of its correct creditor status. *Id.,* at 10.

In order to effect the reorganization, the Plan disclosed that Houser had obtained post-confirmation financing from BankBoston Retail Financing, Inc. (BankBoston), which required that all Class 3 claims be paid by December 31, 1998. *Id.,* at 12, p. 8–9. In addition, Class 2 creditors received their first payment in the amount of four percent of their claim under the Plan prior to January 1, 1999. *Id.,* at 16. By the time of the hearing in June 1999, the Debtor had complied with its confirmed Chapter plan, had obtained post-confirmation financing which provided the post-petition lender with a lien on all the assets of the Debtor and distributions from such financing had been made to both Class 2 and 3 creditors. *Id.,* at 13. In fact, the bankruptcy case was ready to be closed. *Id.*

## III. DISCUSSION

Four months after learning of its mistake, Florsheim filed a motion to determine the treatment of its claim. This motion is governed by Rule 3018(a) which provides in pertinent part:

A plan may be accepted or rejected in accordance with § 1126 of the Code [providing for acceptance or rejection of a plan] within the time fixed by the court pursuant to Rule 3017.... For cause shown, the court after notice and hearing may permit a creditor ... to change or withdraw an acceptance or rejection.

Bankr.R. 3018(a). The issue is whether the Bankruptcy Court's ruling that Florsheim could not change its claim after the Plan had been confirmed was factually erroneous or legally incorrect. By its terms, the Rule requires a showing of cause, which Florsheim argues has been met because execution of the ballot in the wrong location was due to the mistaken belief that the only signature line for Class 2 claims was contained on the second page of the ballot underneath the information concerning Class 3 claims. Had Florsheim's motion been raised immediately upon its discovery of the mistake, cause would have been shown for the relief sought. *See, e.g., In re Piece Goods Shops, Co.,* 188 B.R. 778 (Bankr.M.D.N.C.1995) (Ballots, once cast, may not be changed without permission of the court for cause shown.); *In re Kellogg Square Partnership,* 160 B.R. 332, 334 (Bankr.D.Minn.1993) ("Examples of reasons for a change of vote might include ... misreading the terms of the plan...."); *In re MCorp Financial, Inc.,* 137 B.R. 237, 238 (Bankr.S.D.Tex.1992).

■ However, here, the motion was made months after confirmation, months after distribution of the proceeds from the post-confirmation financing and months after Florsheim learned of its mistake. The motion was not finally determined until the end of June 1999, a full six months later. And, by the time of the hearing, the reorganization had been completed and the Debtor's case was ready to close. At the hearing on the motion, the Bankruptcy Court noted that in order to obtain confirmation of the Plan, the Debtor had negotiated with BankBoston for post-confirmation financing. Appellant Record 12, at 9–11. The amount of financing was directly related to the classification of creditors' claims. *Id.* It was also noted that the Plan was a creditor negotiated plan and Florsheim's attorney served as local counsel for the creditors' committee in the negotiation thereof. *Id.* Thus, to modify Florsheim's status at that point in time would be to the detriment of the financing agent, the Debtor and other creditors. *Id.* Indeed,

at the hearing on the motion for reconsideration, Florsheim's attorney admitted that the post-confirmation lender had relied on the confirmed plan: "No one relied on the treatment as a class three at this point to their detriment other than perhaps the post-confirmation lender who was lending based on what he was told by the debtor were the claims and what had to be paid and in what order and so forth." Appellant Record 16, at 9. As the Court noted, "The problem is when you get these [plans] set, you can't just keep changing them, and I just feel bound by the plan as they executed it, as was forced upon the debtor by the creditors' committee." *Id.,* at 14. Moreover, in the intervening months, Florsheim had not moved for a stay or for immediate relief from the classification. As Judge Wooten noted in the Judgment entered on June 15, 1999, "[t]he debtor/debtor-in-possession has complied with its confirmed Chapter 11 plan, has obtained post-confirmation financing, and that post-petition lender as a lien on all assets of Houser Shoes, Inc., and, pursuant to that lien and the confirmed Chapter 11 plan, change of treatment of Florsheim Group, Inc. cannot be accommodated." Appellant Record 13.

■ "One of the few courts to actually pass on the issue more properly observed that 'vote changing is the exception and not the rule,' and that, upon a challenge, the proponent of the change must demonstrate its propriety." *In re Kellogg Square Partnership,* 160 B.R. at 334 (quoting *In re Featherworks Corp.,* 36 B.R. 460, 462–63 (E.D.N.Y.1984)). Florsheim has not demonstrated the propriety of allowing the modification of its classification. Its only argument is that Florsheim has been unfairly designated as a Class 3 creditor by the Debtor who should have realized it would not agree to a 25 percent payout instead of one for 65 percent. That is insufficient to undo the entire reorganization.

■ As an alternative ruling and although the Appellee has not raised the issue, the undersigned concludes this appeal is moot.

When there is no longer a case or controversy in the constitutional sense, an Article III court is without jurisdiction to adjudicate. Short of that, a case may become moot under "a melange of doctrines relating to the court's discretion in matters of remedy and judicial administration." ... It is the duty of a court to render a judgment in an actual controversy within its jurisdiction and in the presence of proper parties, but a court should not render an opinion in a dispute if the court is without the power to afford effective relief. Orders confirming plans of reorganization do not become immune from appellate review upon their partial, or even substantial, implementation. On the other hand, dismissal of the appeal on mootness grounds is required when implementation of the plan has created, extinguished or modified rights, particularly of persons not before the court, to such an extent that effective judicial relief is no longer practically available.... The primary relief sought by the [Appellant] is a complete reversal of the plan of reorganization. That, of course, would require the undoing of financial transactions involving third parties, not participants in this litigation. [T]hat would only "create an unmanageable, uncontrollable situation for the Bankruptcy Court." ... [Appellant] made no attempt to bring the [other creditors] into these proceedings. We are without jurisdiction to impose substantial adverse consequences upon those absent persons.

*Central States, etc., Pension Fund v. Central Transport, Inc.,* 841 F.2d 92, 95–96 (4th Cir.1988) (quoting *Chamber of Commerce v. U.S. Dept. of Energy,* 627 F.2d 289, 291 (D.C.Cir.1980) and *In re Roberts Farms, Inc.,* 652 F.2d 793, 796–98 (9th Cir.1981)) (other citations omitted). This Circuit has consistently followed the reasoning of *Central States* when considering appeals from bankruptcy rulings. *Cadle Co. II, Inc. v. Calvert Village Ltd. Partnership,* 203 F.3d 819 (Table), 2000 WL 123965 (4th Cir.2000) ("While [appellant's] failure to obtain a stay alone is an insufficient ground for finding mootness, the resulting implementation of the Plan has altered rights (particularly third-party rights) to such an extent that dismissal of the appeal is proper."); *In re McLean Square Assoc., G.P.,* 107 F.3d 866 (Table), 1997 WL 76119 (4th Cir.1997) (District court correctly dismissed appeal as moot where third parties had reasonably relied on the finality of the Bankruptcy Court's decision confirming the Plan.); *In re Rose's Stores, Inc.,* 52 F.3d 322 (Table), 1995 WL 215393 (4th Cir.1995). Dismissal for mootness "is particularly [appropriate] when a party, seeking a return to the status quo ante, sits idly by and permits intervening events to extinguish old rights and create new ones. This is such a case." *Central States,* 841 F.2d at 93.

As previously noted, Florsheim waited over four months before moving the Bankruptcy Court to change its classification. By the time of the ruling, Judge Wooten noted that the plan had been substantially consummated. At no point, prior to or since, has Florsheim sought a stay. The requested relief would significantly alter the distributions already made to creditors not a party to this appeal. Moreover, it would impact the lien held by the postpetition financing institution on all of the Debtor's assets. In effect, modification of Florsheim's classification would completely undo the reorganization which has been completed. Other circuits follow the same reasoning as that of the Fourth Circuit, recognizing that

"a plan of reorganization, once implemented, should be disturbed only for compelling reasons." In determining whether an appeal from a Chapter 11 confirmation order should go forward, the Seventh Circuit asks whether it is "prudent to upset the plan of reorganization at this late date." The Fifth Circuit makes this determination by examining three factors: (1) whether a stay

has been obtained; (2) whether the plan has been "substantially consummated;" and (3) whether the relief requested would affect either the rights of parties not before the court or the success of the plan.

*City of Covington v. Covington Landing Ltd. Partnership,* 71 F.3d 1221, 1225 (6th Cir.1995) (quoting *In re UNR Indus., Inc.,* 20 F.3d 766, 769 (7th Cir.1994) and citing *Manges v. Seattle–First Nat'l Bank,* 29 F.3d 1034, 1039 (5th Cir.1994)). Each of these elements has been shown here.

The undersigned concludes that this appeal should be dismissed as moot and therefore, does not reach the Appellant's arguments.

### IV. ORDER

**IT IS, THEREFORE, ORDERED** that the decision of the Bankruptcy Court is hereby **AFFIRMED** for the reasons stated herein and,

**IT IS FURTHER ORDERED** that Appellant's appeal is hereby **DISMISSED,** and this matter is remanded to the Bankruptcy Court for further proceedings, if appropriate.